No. 98,716

STATE OF KANSAS, *Appellee*, v. MICHAEL HUGHES, *Appellant*.

(224 P.3d 1149)

Opinion filed February 12, 2010.

*Matthew J. Edge*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Michael Hughes seeks review of the Court of Appeals decision affirming the 19-month prison sentence he received for his aggravated escape from custody conviction. Specifically, he challenges the aggregation of the three uncounseled misdemeanor convictions used to enhance his sentence. He argues that the State failed to meet its burden to prove that he made a knowing and intelligent waiver of the right to counsel because the waiver form he signed in two of those actions did not comply with the standards established by this court in *In re Habeas Corpus Application of Gilchrist*, 238 Kan. 202, 708 P.2d 977 (1985).

Hughes pleaded guilty to aggravated escape from custody. His presentence investigation (PSI) report listed three prior uncounseled misdemeanor convictions that were converted to a felony for criminal history purposes pursuant to K.S.A. 21-4711(a). Prior to sentencing, he filed a motion challenging his criminal history score. Hughes complained that it was improper to aggregate the misdemeanor convictions because the waiver of counsel obtained in those cases was insufficient to prove that the waiver was knowingly and intelligently made.

The district court conducted a hearing on the motion. At the hearing Hughes argued that in entries 17 and 18 of the PSI report—Dodge City Municipal Court cases Nos. 95-80391 and 95-80579—the waiver form he signed did not comply with *Gilchrist*. He asserted that the *Gilchrist* sample waiver form included a certification by the judge; a certification not included on the waiver forms he signed. Hughes contended that without that certification, the State could not meet its burden to prove he had knowingly and intelligently waived his right to counsel. Hughes also contested

entry 3 in the PSI report—a municipal court conviction from Wichita—arguing that despite his signing a valid waiver, it was impossible to ascertain if a knowing or intelligent waiver was actually made without a record to identify what was said at the time. Hughes has apparently abandoned that argument, as he did not raise it before either the Court of Appeals or in his petition for review. See *State v. Hughes*, No. 98,716, unpublished opinion filed November 7, 2008, slip op. at 2.

The State responded that in the Dodge City cases, the waiver form Hughes signed, which consisted of one form with both case numbers on it, was identical to what *Gilchrist* required, and the lack of certification by the judge should not affect the determination of whether Hughes intelligently and knowingly waived his right to counsel.

The district court ruled that Hughes had signed the waiver form and acknowledged that he was fully advised by the court of his right to counsel at the time of the convictions. The court noted that the waiver form was not diminished by the omission of the certification recommended in *Gilchrist* because, by signing the form, Hughes acknowledged that he was given the substantive information at the heart of *Gilchrist*. The district court reasoned that Hughes' signature on the waiver form should "have consequences." Given that the form was signed by Hughes and the municipal court judge, the district court believed requiring an additional certification was surplusage. Accordingly, Hughes was sentenced to 19 months in jail.

Hughes appealed his sentence. On appeal he renewed his criminal history score challenge. He also alleged that it was error to use his criminal history—specifically his prior adult convictions and a prior juvenile adjudication—to increase his sentence without submission to a jury, arguing this was a violation of the Sixth and Fourteenth Amendments to the United States Constitution.

The Court of Appeals reviewed *Gilchrist* at length and determined that its requirements focused more on substance than on form. The court reasoned that the purpose of the waiver form was to assure Hughes had knowingly and intelligently waived his right to counsel, and if that fact was ascertainable from the form used,

then the *Gilchrist* requirements were met. Consequently, the Court of Appeals concluded that the municipal courts were not required to utilize an exact copy of the sample form from *Gilchrist* and that the waiver signed by Hughes was sufficient. *Hughes*, slip op. at 8-9.

The Court of Appeals did not address Hughes' next argument, raised for the first time on appeal; Hughes contends that to be valid, the waiver required acknowledgment that he was informed of his right to appointed counsel if he was indigent. *Hughes*, slip op. at 9. Ultimately, the court concluded that there was substantial competent evidence that Hughes had been fully advised of his right to counsel and his subsequent waiver was knowingly and intelligently given. This court granted Hughes' petition for review of the Court of Appeals decision. Additional facts will be provided as necessary to the analysis of the issues presented. We now address the merits of Hughes' claims.

## GILCHRIST'S WAIVER REQUIREMENTS

For his first issue, the appellant argues that two of his prior convictions should not have been included in the calculation of his criminal history because the written waiver of the right to counsel that he signed in those cases did not include a certification by the municipal court judge that is identical to the example waiver form offered by this court in *Gilchrist*.

The State must prove a defendant's criminal history score by a preponderance of the evidence. K.S.A. 21-4715(c). In that respect, this court's standard of review is limited to determining whether substantial competent evidence supports the district court's finding that the State has met this burden. *State v. Presha*, 27 Kan. App. 2d 645, 648, 8 P.3d 14, *rev. denied* 269 Kan. 939 (2000). However, to the extent that we are asked to review the effect of the holding in *Gilchrist*, we are presented with a question of law subject to de novo review. See *State v. Jefferson*, 287 Kan. 28, 33-34, 194 P.3d 557 (2008).

Hughes' argument that the waiver of counsel he signed was invalid stems from this court's holding in *Gilchrist*, 238 Kan. 202. In *Gilchrist*, this court examined the requirements for a valid waiver

of the right to counsel. Gilchrist was found guilty of battery in municipal court. He was not represented by counsel at trial, and no record was made of the proceeding. At sentencing, Gilchrist informed the court that he wanted counsel present. Despite this request, the court proceeded with sentencing, stating that Gilchrist could appeal the decision within 10 days. Although Gilchrist informed his counsel that he wished to appeal, an appeal was never filed. 238 Kan. at 203-04.

While in jail, Gilchrist filed a writ of habeas corpus with the district court, complaining that he had been denied his right to counsel in the municipal court proceedings. At the hearing, the municipal court judge, who had prior knowledge of Gilchrist's personal circumstances and knew he was not indigent, testified that at the time of Gilchrist's first appearance, he read to him the charges, explained the penalties, and asked if Gilchrist intended to have an attorney at trial. He testified that Gilchrist responded that he did not wish to have an attorney. *Gilchrist*, 238 Kan. at 204. Gilchrist admitted under oath that this testimony was accurate. In the end, the district court denied the writ because of Gilchrist's failure to directly appeal. 238 Kan. at 204-05.

That denial was thereafter appealed to this court. While it was ultimately decided that Gilchrist had been both properly advised of his rights and validly waived them by admitting that the judge's testimony was accurate, this court developed a procedure for recording future waivers of the right to counsel in municipal courts. Without requiring that every waiver of counsel be made on the record—a process too burdensome for the municipal courts—this court concluded that obtaining a written waiver was an effective solution. 238 Kan. at 209.

A sample of the suggested waiver form was included in the opinion:

"SAMPLE WAIVER

FOR THE CITY OF _____, _____ COUNTY, KANSAS
CITY OF _____, Plaintiff,

(Municipal Court Identification No. ____)

vs.

_____, Accused Person

## WAIVER OF COUNSEL

The undersigned acknowledges that he or she has been informed by the Municipal Court of the charges against him or her, of the possible penalty, of the nature of the proceedings before the Court, of his or her right to have counsel appointed to represent him or her, if he or she is financially unable to obtain counsel and is determined to be indigent, all of which the undersigned fully understands. The undersigned now states to the Court that he or she does not desire to have counsel, either retained or appointed, to represent him or her before the Court, and wishes to proceed without counsel.

SUBSCRIBED AND SWORN TO before me this ＿＿ day of ＿＿＿＿, 19＿＿.

I hereby certify that the above named person has been fully informed of the charges against him or her and of the accused's right to have counsel, either retained or appointed, to represent the accused at the proceedings before this Court and that the accused has executed the above waiver in my presence, after its meaning and effect have been fully explained to the accused, this ＿＿＿＿＿ day of ＿＿＿＿＿, 19＿＿.

JUDGE OF THE MUNICIPAL COURT"

238 Kan. at 212.

It is the certification language at the bottom of the sample form that is the source of the present complaint.

*Gilchrist* indicated that a properly executed written waiver, such as the example above, would meet the State's burden to prove that a defendant's waiver of counsel was knowingly and intelligently made. 238 Kan. at 208-09. Importantly, however, the court also held that admissions by the defendant regarding the waiver could be used to cure any defect resulting from failing to obtain the written waiver. 238 Kan. at 210. This court held that Gilchrist's acknowledgement that the municipal court's testimony was accurate "cure[d] any defect resulting from the absence of a written waiver and eliminate[d] the problem of proof." 238 Kan. at 210. Thus, we ruled that it is not the specific form of the waiver, but rather the ability to verify the specific circumstances under which it was given that is the critical factor in deciding whether a waiver is valid.

Post-*Gilchrist*, the Court of Appeals has issued several opinions reviewing how municipal courts have applied *Gilchrist*'s requirements when accepting a defendant's waiver of counsel. See *State v. Allen*, 28 Kan. App. 2d 784, 20 P.3d 747 (2001); *State v. Likins*, 21 Kan. App. 2d 420, 903 P.2d 764, *rev. denied* 258 Kan. 861 (1995); *State v. Flores-Picasso*, No. 100,602, unpublished opinion filed August 7, 2009; *State v. Reed*, No. 90,170, unpublished opinion filed March 19, 2004, *rev. denied* 278 Kan. 851 (2004). Of these, the State cites *Likins* for the proposition that a signed waiver form and a journal entry indicating the defendant was advised of his rights was enough to show that the waiver was knowingly and intelligently given. *Likins*, 21 Kan. App. 2d at 433.

In *Likins*, the defendant challenged the sufficiency of his signed waiver form as failing to demonstrate that he knowingly and intelligently waived counsel. However, the court did not address whether the form itself was satisfactory in light of *Gilchrist*. While, as the State suggests, the court did conclude that "[t]he record affirmatively show[ed] defendant was advised of his right to counsel and waived that right" and that there was no evidence "suggesting any irregularity with the prior plea," the court did so under the assumption that the challenge was a collateral attack, requiring that "every reasonable presumption in favor of the validity of the judgment should be indulged." 21 Kan. App. 2d at 433. It therefore did not evaluate whether the documents in the record addressing his waiver complied with the *Gilchrist* requirements.

In contrast, Hughes cites *State v. Allen*, 28 Kan. App. 2d 784, 20 P.3d 747 (2001), where the Court of Appeals distinguished *Likins*. In *Allen*, the court reasoned that a challenge to the constitutional validity of prior convictions required that the court do more than merely "presume that all of the actions of the municipal court followed the law . . ., there must be a showing that the waiver was knowingly and intelligently made, and the attempted waiver must be strictly construed." 28 Kan. App. 2d at 791-92. Based on that standard, the Court of Appeals concluded that a journal entry with the language "defendant has been advised of his constitutional rights and enhancements," coupled with the handwritten word "waiver," was not enough to meet the State's burden to show that

he had knowingly and intelligently waived his right to counsel. Specifically, the court noted that the word "waiver" did not affirmatively explain what was being waived and remanded the issue for further findings. 28 Kan. App. 2d at 788-91.

Two unpublished Court of Appeals opinions are more on point. In *Reed*, Reed challenged the use of two of his prior uncounseled misdemeanor convictions to enhance his sentence because the State had not shown that they were obtained after a knowing and intelligent waiver of counsel. In one of the convictions, Reed had signed a waiver form that followed the *Gilchrist* sample form; however, it lacked a complete caption, contained no case or docket number, was undated, and was not file stamped. Reed never signed a waiver form in the other conviction, and instead the State presented a journal entry that contained a handwritten note stating "6/16/00 factual basis-fully advised of rights, waives them." *Reed*, slip op. at 5. The Court of Appeals determined that these entries fell short of meeting the State's burden to show that in both cases the waiver was knowingly and intelligently given.

Another unpublished opinion of the Court of Appeals was filed after the petition for review was granted in this case. In *Flores-Picasso*, slip op. at 1, defendant Flores-Picasso also challenged the aggregation of his two prior uncounseled misdemeanor convictions. Specifically, he argued that his waiver was not knowingly and intelligently made because the forms he signed did not fully inform him of his right to counsel. *Flores-Picasso*, slip op. at 1-2.

The forms at issue in *Flores-Picasso* contained very detailed language explaining the nature of the charges against him and the maximum possible punishment; his right to an attorney and the method for appointment if he could not afford one; and the benefits of representation and the disadvantages of proceeding to trial without counsel. Further, both written waiver forms contained certification statements signed by the municipal court judge acknowledging that the judge had informed Flores-Picasso of these rights, which he then intelligently waived in the judge's presence. *Flores-Picasso*, slip op. at 2-3.

Importantly, while the forms used were quite detailed, they contained language different than the sample form in *Gilchrist*. In fact,

the forms Flores-Picasso signed provided more information and in greater detail than the *Gilchrist* example. In specifically addressing this discrepancy, the Court of Appeals stated:

> "*Gilchrist* did not mandate that waivers of counsel obtained in municipal courts contain the exact language of its sample. . . . As long as the written waiver shows that the 'accused was properly advised of his or her rights and that he or she knowingly and intelligently waived those rights,' the waiver, regardless of the specific language used, is sufficient for purposes of showing that the defendant's Sixth Amendment right to counsel was not violated." *Flores-Picasso*, slip op. at 4 (citing *Gilchrist*, 238 Kan. at 210).

Thus, with substance prevailing over form, the Court of Appeals concluded that the forms Flores-Picasso signed did constitute substantial competent evidence that he made a knowing and intelligent waiver of his right to counsel. *Flores-Picasso*, slip op. at 4.

As in *Flores-Picasso*, the Court of Appeals in the present case examined *Gilchrist*'s requirements and concluded:

> "*Gilchrist* did not mandate that waivers of counsel obtained in municipal courts contain the exact language of its sample. The court specifically noted that the sample was a suggested form which it recommended for use in municipal courts. [*Gilchrist*,] 238 Kan. at 209. *Gilchrist* clearly focused on whether the defendant knowingly and intelligently waived the right to counsel, which can be accomplished without specific certification language by the judge in the waiver form. '[T]he reason for the requirement of a record of the proceedings and a written waiver of counsel are for the purpose of proving an accused was properly advised of his [or her] rights and that he [or she] knowingly and intelligently waived those rights.' 238 Kan. at 209-10." *Hughes*, slip op. at 8.

As further support for its position, the Court of Appeals relied on *State v. Strayer*, 242 Kan. 618, 628, 750 P.2d 390 (1988), and *State v. Turner*, 239 Kan. 360, 365-68, 721 P.2d 255 (1986). Both cases, decided after *Gilchrist*, upheld waivers even though no written waiver form was signed by either defendant. *Hughes*, slip op. at 8-9. In *Strayer*, this court determined that while the district court judge never explicitly informed the defendant about his right to have an attorney present, because the defendant had apparently hired and fired an attorney during the course of the litigation, and had also been involved in previous legal proceedings, the defendant's statements to the court that he had no objection to continuing

with sentencing absent counsel was a knowing and intelligent waiver of his right to have counsel at sentencing. 242 Kan. at 628.

Likewise, in *Turner*, based on the review of an expanded record, this court concluded that the defendant's failure to dispute a pretrial journal entry stating that the court had informed him of his right to counsel and requirements for appointment of counsel, together with entries in the plea transcript showing that he was asked whether he had been informed of his right to counsel, was enough to show that the defendant's waiver was knowingly and intelligently made despite the lack of a written waiver. 239 Kan. at 367-68.

The Court of Appeal's reliance on *Strayer* and *Turner* is not completely determinative because neither of the cases involved municipal court waivers. More to the point, neither opinion addresses the issue of a written waiver at all. Both simply analyze what other types of evidence could satisfy the State's burden of proof. Further, both decisions relied in part on transcripts from the record, something generally not available in municipal court— the main reason for requiring a written waiver to begin with.

Ultimately, however, we find that *Gilchrist* does not require that municipal courts use forms identical to the sample included in the opinion. At the heart of *Gilchrist* was finding a way to assure that a defendant's right to counsel was adequately protected without unduly burdening the municipal courts. What is clear after *Gilchrist* is that because municipal courts are not courts of record, a written document should be obtained so that there is evidence that the defendant was fully informed of his or her rights to counsel and that any waiver thereof was knowingly and intelligently made. *Gilchrist* merely mandated that the use of the sample written waiver satisfies the constitutional requirement of establishing a knowing and voluntary waiver of counsel. It did not invalidate the use of other methods for recording the same information. This court has on many occasions reiterated that " ' " '[t]he law of this state is realistic. Substance prevails over form.' " ' " *Kelly v. VinZant*, 287 Kan. 509, 528, 197 P.3d 803 (2008); *State v. Fewell*, 286 Kan. 370, 389, 184 P.3d 903 (2008). As long as the necessary information is ascertainable from other means or waiver forms, *Gilchrist's* requirements are satisfied.

## HUGHES' CRIMINAL HISTORY SCORE

Having found a waiver form identical to that contained in *Gilchrist* is not required for an effective waiver of counsel, we now turn to Hughes' next issue: was there substantial competent evidence in the record to support the finding that the State met its burden to show by a preponderance of the evidence that Hughes had a criminal history score of A?

What is apparent from *Gilchrist* is that the evidence in the record must answer two critical questions in order to establish an effective knowing and voluntary waiver of counsel; first, whether the defendant has been *fully advised* and *properly informed* of his or her right to counsel and, second, whether, upon having been fully advised and properly informed, the defendant made a clear determination not to have counsel represent him or her before the court. Based on its interpretation of *Gilchrist, Strayer,* and *Turner,* as well as its review of the contents of the form signed by Hughes, the Court of Appeals concluded that there was substantial competent evidence to establish both that Hughes had been fully advised of his right to counsel and that his subsequent written waiver was knowingly and intelligently given. *Hughes,* slip op. at 9.

In his petition for review, Hughes suggests that proof that his waiver was knowing and intelligent can only occur when there is "some record that the court made an inquiry into the defendant's desire to waive counsel" and that because the certification is not included in the Dodge City form, that requirement has not been met. He relies on a portion of *Gilchrist* where the court, in reviewing the holding of *State v. Andrews,* 5 Kan. App. 2d 678, 623 P.2d 534 (1981), stated:

"[*Andrews*] held that even if the trial court conducted an extensive inquiry into the defendant's desire to waive counsel, if that inquiry did not appear *in the record,* the State could not meet its burden of proving that defendant's waiver of counsel was knowingly and intelligently made and therefore, defendant's Sixth Amendment right to counsel was abridged." *Gilchrist,* 238 Kan. at 208-09.

However, in *Andrews* the only record entry pertaining to the defendant's waiver was the judge's statement in the trial transcript that "[t]he record may show that he is appearing personally, acting

in his own defense, having waived his right to counsel." *Andrews*, 5 Kan. App. 2d at 680. The defendant never signed a written waiver, nor was there any other express indication in the record that he had been advised of any rights at all, just the above reference that he had waived his right to counsel. All *Andrews* stands for in this context is to reinforce what *Gilchrist* already established—that there must be some record that the defendant was fully apprised of his or her rights to counsel and that despite that information he or she knowingly and intelligently waived that right.

Importantly, it does not automatically follow that just because the *Gilchrist* certification language has not been included in the waiver form, Hughes did not make a knowing and intelligent waiver. As discussed above, Kansas courts have not interpreted *Gilchrist* as requiring that a waiver form be identical to the suggested sample. See, *e.g., Flores-Picasso*, slip op. at 4. Rather, the courts look for substantial competent evidence from the record related to the waiver supporting the district court's conclusion. See *State v. Mattox*, 280 Kan. 473, 484, 124 P.3d 6 (2005) (noting that the district court's findings related to waiver of *Miranda* rights were supported by substantial competent evidence); *State v. Siesener*, 35 Kan. App. 2d 649, 650, 137 P.3d 498 (2005), *rev. denied* 281 Kan. 1381 (2006); *State v. Presha*, 27 Kan. App. 2d 645, 648, 8 P.3d 14, *rev. denied* 269 Kan. 939 (2000). Substantial competent evidence has been described by this court as "that which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved." *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009).

Here, there is no question that Hughes believes he was apprised of his right to counsel and that he signed a form that expressly states he was so advised and knowingly and intelligently waived that right. That form is also signed by the municipal court judge underneath the following language: "Subscribed and sworn to before me this 25 day of July 1995." Hughes does not challenge the truth of the waiver he signed, but rather contends that the waiver form itself does not meet the standard set forth in *Gilchrist*. Hughes maintains that the absence of the certification by the judge means that the requirement establishing that he was properly in-

formed and fully advised of his right to counsel by the person charged with doing so was not met.

Hughes makes a valid point. The waiver form utilized by the Dodge City Municipal Court is sufficient in establishing what Hughes may have believed his rights to be and a voluntary waiver of those perceived rights. Absent however, is any verification or validation of what he was told, a function that the *Gilchrist* certification satisfies. It is not up to the defendant to know what "fully advised" means. It is the judge who is burdened with assuring that Hughes' rights have been adequately protected. See *State v. Carter*, 284 Kan. 312, 321, 160 P.3d 457 (2007) ("It is the task of the district court judge to insure that a defendant's right to counsel under the Sixth Amendment to the United States Constitution is honored.") Recently, we clarified that when a defendant exercises his or her statutory right to challenge the accuracy of the convictions contained in his or her criminal history worksheet, the State must carry the burden of producing further evidence proving the truth of the convictions by a preponderance of the evidence. *State v. Schow*, 287 Kan. 529, 539-40, 197 P.3d 825 (2008). The State may not shift the burden onto the defendant to *disprove* the convictions. Such a process, we said, ignores the plain language of K.S.A. 21-4715(c) and suggests that we construe a criminal history worksheet in favor of the State—a result inconsistent with the well-established principle that criminal statutes are strictly construed in favor of the accused. *Schow*, 287 Kan. at 539-40. The burden to prove the truth of a defendant's criminal history score remains with the State. Once a defendant files a written objection to his or her criminal history, it is only after the State has met its burden to produce such evidence that the burden to produce evidence may shift to the defendant. K.S.A. 21-4715(c). The burden of proof, however, never shifts.

Similarly, requiring Hughes to "disprove" that the waiver information recited to him by the court was adequate when it was the court's responsibility to do so is similar to the burden shifting we said was improper in *Schow*. Not only does it place the responsibility for full knowledge and understanding of the law with the wrong person, it also requires this court to construe the waiver

form in favor of the State. Had the State called the municipal court judge to testify before the district court or provided other evidence that the waiver information Hughes received was in fact the requisite information, then the burden of production would have shifted to Hughes should he further contest the issue. See *Gilchrist*, 238 Kan. at 210 (Gilchrist's acknowledgement that the municipal judge's testimony was accurate "cure[d] any defect resulting from the absence of a written waiver and eliminate[d] the problem of proof."). Because the State has failed to present any evidence to show that the waiver advice Hughes acknowledged receiving was in actuality the "proper" or "fully informed" advice, the waiver form utilized here, standing alone, does not satisfy the requirements set forth in *Gilchrist*.

Previous decisions interpreting similar issues have consistently held that a simple acknowledgement that the defendant waived his or her rights is not enough to clearly show what rights the defendant has waived. See, *e.g.*, *Allen*, 28 Kan. App. 2d at 791; *Reed*, slip op. at 4-6. Without the certification language, all that can be readily determined is that a defendant acknowledged being informed of his or her rights, but we cannot ascertain whether the proper or full panoply of rights was ever communicated.

Thus, the importance of the judge's certification in the waiver cannot be understated. As municipal courts are not courts of record, the certification provides a means for a reviewing court to be assured that the municipal court satisfied its own duty to protect the defendant's rights. A form similar to that which was set forth (and actually cited to) in *Gilchrist* was included in the Municipal Judges' Manual, a document prepared for and distributed to all municipal courts in the State. The fact that the sample form included therein also requires the judge's certification underscores the importance of recording this bifurcated duty. Not only must a defendant clearly acknowledge a *knowing* and voluntary waiver of right to counsel, but the record must also establish that the judge has satisfied the obligation to insure that the proper information has been communicated so that the defendant may intelligently make that choice. The State has failed to meet its burden to show that the waiver in Hughes' two prior misdemeanor convictions was

knowingly and intelligently made. This matter is reversed and remanded to the district court for resentencing based on a recalculated criminal history consistent with this opinion.

Hughes also suggests that because the waiver form did not include an express statement acknowledging that he was informed of his right to appointed counsel if he was indigent, the waiver was not knowingly and intelligently made. The Court of Appeals did not address this issue, noting that this argument was made for the first time on appeal. Consequently, the challenge on this question is not properly before the court and, further, we need not reach it due to our resolution of the previous issue. See *State v. Bello*, 289 Kan. 191, 193, 211 P.3d 139 (2009); *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007) (issues not raised before trial court cannot be raised on appeal).

Finally, Hughes asserts that use of his prior convictions as well as a prior juvenile adjudication to calculate his criminal history score violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution where evidence of those convictions was not proven beyond a reasonable doubt. He acknowledges that this court has already decided the issue; he includes it merely to preserve it for federal review.

This court has previously concluded that the State does not have to prove criminal history to a jury beyond a reasonable doubt. *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Further, this court analyzed post-*Apprendi* decisions and reaffirmed the *Ivory* rule. See *State v. Gonzalez*, 282 Kan. 73, 118, 145 P.3d 18 (2006), and *State v. Manbeck*, 277 Kan. 224, 229, 83 P.3d 190 (2004). Finally, this court recently determined that the rule applies to prior juvenile adjudications as well. See *State v. Fischer*, 288 Kan. 470, 476, 203 P.3d 1269 (2009); *State v. Hitt*, 273 Kan. 224, 236, 42 P.3d 732, *cert. denied* 537 U.S. 1104 (2003). Hughes' arguments will not be revisited at this time.

The Court of Appeals decision affirming the district court's ruling is affirmed in part and reversed in part. This matter is remanded to the district court for resentencing.