NOT DESIGNATED FOR PUBLICATION

No. 116,740

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTT NELSON ETEEYAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed September 22, 2017. Affirmed.

*James E. Rumsey*, of Lawrence, for appellant.

*Josh Smith*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER, J., and STUTZMAN, S.J.

PER CURIAM:  Scott Nelson Eteeyan pled guilty to a misdemeanor charge of violating the statutory requirements requiring vehicle liability insurance coverage. He later sought to withdraw his plea on the basis of manifest injustice, but his motion was denied and his timely appeal from the denial is now before us. We find no error by the district court and we affirm.

FACTS AND PROCEDURAL BACKGROUND

Early in the afternoon on Christmas Eve 2014, a law enforcement officer issued Eteeyan a notice to appear, directing him to be present in the Jackson County District Court to answer a misdemeanor charge of violating the vehicle liability coverage requirements of K.S.A. 2014 Supp. 40-3104. On February 9, 2015, Eteeyan appeared in court, signed a waiver of counsel, and pled guilty to one count of failure to maintain liability insurance. District Magistrate Judge Blaine Carter sentenced Eteeyan to six months in jail but granted unsupervised probation for a period of six months and ordered him to pay the mandatory minimum $300 fine plus costs. Eteeyan signed the journal entry acknowledging his guilty plea.

Eleven months later, on January 7, 2016, Eteeyan filed a motion to withdraw that guilty plea. That motion was heard on April 24, 2016, again by Judge Carter who denied Eteeyan's request to withdraw his plea. Judge Carter stated that when Eteeyan appeared previously he had informed him of the rights he was waiving, including those associated with the rights to counsel and to a trial. Eteeyan appealed that ruling to the district court.

The district court heard Eteeyan's motion on August 29, 2016, taking judicial notice of the transcript of the hearing that had been held before the district magistrate on April 24, 2016, and receiving as exhibits the waiver of counsel and journal entry from the February 2015 hearing. In delivering his ruling, the district judge commented at some length about his personal experience with Judge Carter's manner of advising defendants of their rights before accepting waivers of counsel and guilty or no contest pleas. After considering the motion and arguments, the district court denied the motion to withdraw plea. Eteeyan timely appeals from the order of the district judge.

ANALYSIS

The sole issue for our review is whether the district court abused its discretion in denying Eteeyan's motion to withdraw his plea. Specifically, Eteeyan argues the district court abused its discretion because his waiver of counsel was invalid and, therefore, his plea was not intelligently made. For the reasons discussed below, we disagree, find no abuse of discretion, and affirm.

*Standard of Review*

"To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." K.S.A. 2016 Supp. 22-3210(d)(2).

> "Manifest injustice exists if something is 'obviously unfair or shocking to the conscience.' *State v. Barahona*, 35 Kan. App. 2d 605, 608-09, 132 P.3d 959 (2006). In determining whether the defendant has established manifest injustice, this court should consider the following factors: '(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made.' *State v. Bricker*, 292 Kan. 239, 244, 252 P.3d 118 (2011)." *State v. Jackson*, 52 Kan. App. 2d 125, 131-32, 363 P.3d 408 (2015).

Unless an abuse of discretion is shown, an appellate court will not set aside a district court's decision to deny a postsentence motion to withdraw plea. *State v. Szczygiel,* 294 Kan. 642, 643, 279 P.3d 700 (2012). Judicial discretion is abused when no reasonable person would have taken the action of the district court because it was arbitrary, fanciful, or unreasonable, or when the action was based on an error of law or an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). Eteeyan bears the burden of proving that the district court abused its discretion. See *State v. Bricker*, 292 Kan. 239, Syl. ¶ 2, 252 P.3d 118 (2011). We defer to

any factual findings made by the trial court, provided they are supported by substantial competent evidence. *Jackson*, 52 Kan. App. 2d at 132.

*Discussion*

The essence of Eteeyan's argument is that the district court should have granted his motion to withdraw plea and the failure to do so was an abuse of discretion. That claim rests on the contention that his written waiver of counsel was invalid, which in turn rendered his plea invalid, and on the district judge's remarks while explaining his decision from the bench.

*The waiver*

The Kansas Supreme Court has addressed the topic of written waivers of counsel in two cases that are of particular relevance to Eteeyan's argument. In *In re Habeas Corpus Application of Gilchrist,* 238 Kan. 202, 708 P.2d 977 (1985), the court appended a "Sample Waiver" to its opinion, drawn from the "Kansas Municipal Court Manual, Traffic and Municipal Ordinance Violations § XII, p. 12 (rev. ed. 1981)," and "recommend[ed] that it be used by the municipal courts of this state in cases where an accused may be deprived of his liberty." 238 Kan. at 209, 212.

Twenty-five years later, the court revisited the issue of knowing and intelligent waivers of counsel—and the form recommended in *Gilchrist*—in *State v. Hughes*, 290 Kan. 159, 224 P.3d 1149 (2010). Hughes argued that the State had failed to meet its burden to show he knowingly and intelligently waived his right to counsel in two uncounseled misdemeanor cases that the State wanted to include in his criminal history. Specifically, Hughes asserted the fatal flaw in those cases lay in the omission of a judge's certification from the written waiver of counsel he signed, an element that was included in the *Gilchrist*-blessed version. The court found merit in Hughes' argument, concluding

4

that the judge's certification played an important role in those two municipal court convictions. Since there was no record in the two municipal court cases and the waiver did not have the judge's certification from the *Gilchrist* form, there was a missing element: "[T]he record must also establish that the judge has satisfied the obligation to insure that the proper information has been communicated so that the defendant may intelligently make that choice." 290 Kan. at 172.

In this case, Eteeyan places great weight on the fact that when he appeared before Judge Carter on February 9, 2015, signed the waiver of counsel, and pled guilty, no record was made either electronically or by a court reporter. Because of that, Eteeyan claims there is no way to know

> "what he was told by the Magistrate to see if it went into his intellectual ability sufficient to allow a reasonable person, the judge, to conclude that he knew what he was doing by inquiry into [his] education, [or] whether he had any cognitive or mental health problems, which might interfere with his ability to understand."

Eteeyan contends if a district judge or district magistrate has the ability to preserve a verbatim record and fails to do so "we will be left with *Gilchrist* forms, which say nothing about the defendant's capacity and ability to understand, and we will be back relying upon murky memories." We are not persuaded by his argument.

First, Eteeyan acknowledges that on February 9, 2015, before he entered his guilty plea, he signed the "Waiver of Counsel" that was admitted as an exhibit in his motion hearing before the district court. This case differs significantly from *Hughes* in that the missing judicial certification which constituted error under the facts in *Hughes* was present and completed by Judge Carter on the form Eteeyan signed. Further, with the exception of nonsubstantive wording substitutions and punctuation changes, the waiver signed by Eteeyan is identical to the one endorsed by the court in *Gilchrist*.

5

Second, Eteeyan seeks to impose requirements on the waiver process that exceed those deemed critical by the Supreme Court in either *Gilchrist* or *Hughes*. Neither required the inquiry into educational background, possible history of mental health concerns, or assessment of subjective understanding that Eteeyan asks us to find was critically absent in his case. Instead, in *Hughes*, the court found:

> "The waiver form utilized by the Dodge City Municipal Court is sufficient in establishing what Hughes may have believed his rights to be and a voluntary waiver of those perceived rights. Absent however, is any verification or validation of what he was told, a function that the *Gilchrist* certification satisfies." *Hughes*, 290 Kan. at 171.

As the *Gilchrist* form, *with* certification, was used here, the obligations that our Supreme Court found were necessary to meet constitutional requirements were fulfilled.

Third, Eteeyan would have us elevate making a verbatim record to the constitutional level, but only when a court has the physical capability to do so. He would establish one constitutional standard for municipal courts, where the courts in *Gilchrist* and *Hughes* recognized records generally are not made, and a different constitutional standard for the district courts, where records are made electronically or by court reporters. Eteeyan offers no persuasive support for the proposition that different protections under the Constitution exist depending on the courtroom in which one happens to be standing. Our Supreme Court made no such distinction in either *Gilchrist* or *Hughes* and wrote in *Hughes*:

> "Ultimately, however, we find that *Gilchrist* does not require that municipal courts use forms identical to the sample included in the opinion. At the heart of *Gilchrist* was finding a way to assure that a defendant's right to counsel was adequately protected without unduly burdening the municipal courts. What is clear after *Gilchrist* is that because municipal courts are not courts of record, a written document should be obtained so that there is evidence that the defendant was fully informed of his or her rights to counsel and that any waiver thereof was knowingly and intelligently made. *Gilchrist*

6

merely mandated that the use of the sample written waiver satisfies the constitutional requirement of establishing a knowing and voluntary waiver of counsel. It did not invalidate the use of other methods for recording the same information. This court has on many occasions reiterated that "'"[t]he law of this state is realistic. Substance prevails over form."'" *Kelly v. VinZant,* 287 Kan. 509, 528, 197 P.3d 803 (2008); *State v. Fewell,* 286 Kan. 370, 389, 184 P.3d 903 (2008). As long as the necessary information is ascertainable from other means or waiver forms, *Gilchrist*'s requirements are satisfied." 290 Kan. at 168.

Our Supreme Court has held that compliance with the requirements of the Constitution concerning knowing and voluntary waivers of counsel can be shown through the form approved in *Gilchrist* and *Hughes*. Or, if some element of that form is absent—or no form was used—the gap can be filled with evidence from another source, such as testimony or a verbatim record. The key is having the information that shows the constitutional requirements were met. Those underlying requirements are not fluid and do not fluctuate with a court's inability to make a record or the fact that a record could have been made but was not. A completed *Gilchrist* form that shows constitutional compliance in a municipal court does so as well in a district court.

*Manifest injustice*

As part of his effort to show manifest injustice in the denial of his motion, Eteeyan contends that had he not waived counsel and pled guilty, he had potential defenses he could have asserted. He now argues he could have raised a legal defense based on an argument that the vehicle stop that resulted in the charge against him was an unconstitutional seizure. Further, although he admits his vehicle liability insurance coverage had expired on December 15, 2014, nine days before he was stopped, he asserts he "had coverage for thirty (30) more days" because of "K.S.A. 40-276(a) (2014 Supp.) [*sic*]."

7

After entry of his plea, Eteeyan may have decided he had potential defenses to the charge to which he pled. Those defenses may or may not have been successful; we note that K.S.A. 40-276 is a definitional section that makes no reference to a grace period of coverage following a policy expiration and K.S.A. 2016 Supp. 40-276a(a) only requires an insurance company to give a 30-day notice of intended nonrenewal of a policy. The entry of a plea of guilty or no contest often involves a defendant relinquishing potential defenses for reasons he or she deems sufficient, such as gaining the benefit of a plea deal or simply wishing to resolve a case to avoid further court appearances. Eteeyan's assertion that he was unaware of potential defenses because he did not have counsel is related to his decision to waive his right to counsel—a decision we have found was valid.

As the State argues on appeal, in the hearing on his motion before the district magistrate, Eteeyan testified he had appeared in court numerous times prior to this case, had been represented by an attorney in the past, and understood on February 9, 2015, that he had the option of getting an attorney that day. Although his experience with the process would not cure a constitutionally flawed waiver, it does bear on the question whether there was something "obviously unfair or shocking to the conscience" that compels a finding of manifest injustice. We do not have a flawed waiver and we find nothing obviously unfair or shocking in this case.

*Abuse of discretion*

Finally, Eteeyan contends that the district court based the denial of his motion on errors of both law and fact. Both arguments are based on the district judge's extended comments about his personal experience appearing before Judge Carter prior to taking the bench. Eteeyan claims the district judge effectively took judicial notice of his own experience with Judge Carter as one who was extremely thorough and careful in advising defendants of their rights and in accepting pleas. By doing so, Eteeyan reasons, the

8

district court erred on the law governing judicial notice, which led to factual error when he based his denial on those facts.

If the district court had relied on the statement of personal experience with Judge Carter as the basis for its decision, the statement would transition from a personal observation into testimony from the bench. The district court, however, noted the importance of *Gilchrist* and *Hughes* in establishing an approved form for waivers, and it found the form signed by Eteeyan complied. He also relied on Eteeyan's history of court appearances in evaluating whether the circumstances were obviously unfair or shocking and found no manifest injustice. The district court's decision was supported by assessments of the law and facts that we have likewise found to be sound.

*Conclusion*

Eteeyan has presented nothing that persuasively compels characterization of his waiver of counsel and guilty plea as "obviously unfair or shocking to the conscience." We find the district court's denial of the motion to withdraw plea was neither based on an error of fact nor one of law, and it was not arbitrary, fanciful, or unreasonable. Therefore, Eteeyan has failed to meet his burden to prove abuse of discretion. We find no error in the district court's denial of Eteeyan's motion to withdraw his plea.

Affirmed.